## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| JENNIFER GAJEWSKI, RACHEL HOLMES, and ANNE O'BOYLE, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>ALLIED INTERSTATE LLC, )<br><br>Defendant. ) | Case No.: 17-cv-1609<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

### INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, ch. 421-427, Wis. Stats. (the "WCA").

### JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

### PARTIES

3.      Plaintiff Jennifer Gajewski ("Gajewski") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff Rachel Holmes ("Holmes") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.      Plaintiff Anne O'Boyle ("O'Boyle") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6.    Each plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her debts allegedly incurred for personal, family, or household purposes, namely a personal credit card.

7.    Each plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she allegedly engaged in consumer credit transactions – purchases of household goods with a personal credit card.

8.    Defendant Allied Interstate LLC ("Allied Interstate") is a foreign limited liability company with its principal offices located at 12755 Hwy 55, Suite 300, Plymouth, Minnesota 55441.

9.    Allied Interstate is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10.    Allied Interstate is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

11.    Allied Interstate is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

12.    Allied Interstate is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Relating to Plaintiff Gajewski*

13.    Sometime prior to January 13, 2017, Gajewski obtained a "Toys R Us / Babies R Us" ("Toys R Us") credit card, used solely for personal, family, or household purposes. The creditor of Gajewski's Toys R Us credit card account was Synchrony Bank ("Synchrony"). Gajewski's Synchrony account was associated with an account number ending in 4938.

2

14.    On or about January 13, 2017, Synchrony mailed an account statement to Gajewski regarding her Synchrony account ending in 4938.  A copy of this account statement is attached to this complaint as <u>Exhibit A</u>.

15.    <u>Exhibit A</u> contains the following:



Exhibit A.

16.    <u>Exhibit A</u> also contains the following:

| | | Account Number: ███████ 4938 | |
|---|---|---|---|
| **Total Minimum Payment Due** | **Amount Past Due** | **Payment Due Date** | **New Balance** |
| $132.00 | $99.00 | 02/06/2017 | $1,428.65 |

Exhibit A.

17.    <u>Exhibit A</u> states that, as of January 13, 2017, the "New Balance" of Gajewski's Synchrony account with an account number ending 4938 was $1,428.65 and that this account had an "Amount Past Due" of $99.00 and a "Total Minimum Payment Due" of $132.00, with a "Payment Due Date" of February 6, 2017.

18.    On or about January 19, 2017, Allied Interstate mailed a debt collection letter to Gajewski regarding an alleged debt, allegedly owed to "Synchrony Bank" for Gajewski's "'R'

3

Us MasterCard" with an account number ending in 4938. A copy of this letter is attached to this complaint as Exhibit B.

19. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Gajewski inserted by computer.

20. Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and with the information specific to Gajewski inserted by computer.

21. Upon information and belief, Exhibit B was the first debt collection letter Defendant mailed to Gajewski.

22. Exhibit B contains the statutorily required validation notice, advising Gajewski of her rights to dispute the debt:

Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt or any portion thereof, we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, or any portion thereof, we will obtain and mail to you verification of the debt or a copy of a judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit B.

23. Exhibit B also contains the following:

Re: "R"Us MasterCard®
    Creditor: Synchrony Bank   Account No. ************4938
    Total Account Balance: $1,428.00
    Amount Now Due: $132.00
    Reference No.: ████████6139

Exhibit B.

24. Exhibit B also states:

We are a debt collection company and Synchrony Bank has contracted with us to collect the debt noted above. This is an attempt to collect a debt and any information obtained will be used for that purpose.

Exhibit B.

4

25. Exhibit B states that, as of January 19, 2017, the balance of Gajewski's Synchrony account with an account number ending in 4938 had a balance of $1,428.00.

26. Based on Exhibits A and B, the unsophisticated consumer would have no idea how much was owed on Gajewski's Synchrony account when Allied Interstate mailed its letter on January 19, 2017.

27. Exhibit A, sent by the creditor, informed Gajewski that the balance was $1,428.65 on January 13, 2017.

28. Exhibit B, sent by a third-party debt collector, informed Gajewski the balance was $1,428.00 six days later, on January 19, 2017.

29. Based on the balances stated, any consumer would be confused as to the amount that was owed on the account at any given time throughout this period.

30. Gajewski did not make a payment on the account that would account for any reduction in the amount owed.

31. Allied's representation that the balance of the account is lower than the actual amount of the balance – by truncating the cents – places the consumer at risk of not paying a sufficient amount to pay off the balance.

32. A consumer who believes she is paying off an account, but whose payment is actually short of the real balance of the account, risks incurring significant costs due to unpaid residual interest and late fees.

33. Moreover, Exhibit B is confusing on its face as to the amount Allied Interstate is actually attempting to collect.

34. Exhibit B states that "Synchrony Bank has contracted with us to collect the debt noted above." Exhibit B.

5

35.     However, the amount of the "debt noted above" that Allied Interstate is attempting to collect is unclear because there are two amounts "noted above." It is unclear whether Allied Interstate is attempting to collect the "Total Account Balance" of $1,428.00 or only the "Amount Now Due" of $132.00.

36.     Misstating Gajewski's account balance is material because it is a false statement directly concerning the character, amount, or legal status of the debt. 15 U.S.C. § 1692e(2)(a).

37.     Moreover, Exhibit B's confusing statements of the amount Allied was attempting to collect are materially misleading because they directly concern the character, amount, or legal status of the debt. 15 U.S.C. § 1692e(2)(a).

38.     It is not unusual for banks to hire a debt collector to collect only the "past due" amount, *i.e.,* missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." Whichever number Allied Interstate is truly collecting, it need only state that amount in the letter.

39.     The different amounts on Exhibit B render Exhibit B confusing to the unsophisticated consumer, who would not be able to determine, or would be confused as to, which amount Allied Interstate was actually attempting to collect.

40.     Moreover, under *Barnes* Allied Interstate cannot attempt to collect the entire balance that is owed to Synchrony because "only the past due amount, the amount owed [to the debt collector] can be the amount of the debt . . . ." 493 F.3d at 840; *see also* 15 U.S.C. § 1692e(2)(A).

6

41.     Exhibit B equivocates as to the amount that Allied Interstate is actually trying to collect.

42.     Exhibit B indicates that Allied Interstate is actually attempting to collect the entire account balance when it has not been hired to do so.

43.     Upon information and belief, the purpose of Allied Interstate's conduct – equivocating as to the amount it is hired to collect – is to increase its profits under false pretenses.

44.     Upon information and belief, Allied Interstate, like most third-party debt collectors, is paid on a contingency basis, retaining a portion of each debt recovered. *See* 78 FR 67848, 67849 (Nov. 12, 2013) ("Typically, third-party collectors are paid on a contingency basis, usually a percentage of recoveries.").

45.     Upon information and belief, if a consumer pays Allied Interstate an amount greater than the "Total Minimum Payment Due" stated on Exhibit A, Allied Interstate is still entitled to retain a portion of that recovery.

46.     Gajewski was confused by Exhibits A-B.

47.     Gajewski had to spend time and money investigating Exhibits A-B and the consequences of any potential responses to Exhibits A-B.

48.     Gajewski had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Gajewski on the consequences of Exhibits A-B.

### *Facts Relating to Plaintiff Holmes*

49.     Sometime prior to July 20, 2016, Holmes obtained a "Walmart MasterCard" ("Walmart") credit card, used solely for personal, family, or household purposes. The creditor of

7

Holmes' Walmart credit card account was Synchrony.  Holmes' Synchrony account was associated with an account number ending in 1829.

50.     On or about July 20, 2016, Synchrony mailed an account statement to Holmes regarding her Synchrony account ending in 1829.  A copy of this account statement is attached to this complaint as <u>Exhibit C</u>.

51.     <u>Exhibit C</u> contains the following:



**Walmart MasterCard**

RACHEL HOLMES
Account Number: ████ 1829

Visit us at walmart.com/credit
Customer Service: 1-866-314-9607

| Summary of Account Activity | |
| --- | --- |
| Previous Balance | $1,634.87 |
| + Fees Charged | $35.00 |
| + Interest Charges | $32.66 |
| New Balance | $1,702.53 |
| Credit Limit | $1,600 |
| Available Credit | $0.00 |
| Cash Advance/Quick Cash Limit | $320 |
| Available Cash | $0.00 |
| Statement Closing Date | 07/20/2016 |
| Days in Billing Cycle | 31 |

| Payment Information | |
| --- | --- |
| New Balance | $1,702.53 |
| Amount Past Due | $184.00 |
| Total Minimum Payment Due | $269.00 |
| Overlimit Amount | $102.53 |
| Payment Due Date | 08/12/2016 |

**Late Payment Warning:** If we do not receive your Total Minimum Payment Due by the Payment Due Date listed above, you may have to pay a late fee up to $35.00.
**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay ... | You will pay off the balance shown on this statement in about ... | And you will end up paying an estimated total of ... |
| --- | --- | --- |
| Only the minimum payment | 6 years | $2,993.00 |

Exhibit C.

52.     <u>Exhibit C</u> states that, as of July 20, 2016, the "New Balance" of Holmes' Synchrony account with an account number ending 1829 was $1,702.53 and that this account had an "Amount Past Due" of $184.00 and a "Total Minimum Payment Due" of $269.00, with a "Payment Due Date" of August 12, 2016.

53.     On or about July 22, 2016, Allied Interstate mailed a debt collection letter to Holmes regarding an alleged debt, allegedly owed to "Synchrony Bank" for Holmes' ""Walmart

Mastercard" with an account number ending in 1829. A copy of this letter is attached to this complaint as Exhibit D.

54. Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Holmes inserted by computer.

55. Upon information and belief, Exhibit D is a form debt collection letter, generated by computer, and with the information specific to Holmes inserted by computer.

56. Upon information and belief, Exhibit D was the first debt collection letter Defendant mailed to Holmes regarding this alleged debt.

57. Exhibit D contains the statutorily required validation notice, advising Holmes of her rights to dispute the debt:

Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt or any portion thereof, we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, or any portion thereof, we will obtain and mail to you verification of the debt or a copy of a judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit D.

58. Exhibit D also contains the following:

Re:   Walmart® Mastercard®
      Creditor: Synchrony Bank   Account No. ************1829
      Amount Owed: $1,702.00
      Reference No.: ███████7305

Exhibit D.

59. Exhibit D also states:

We are a debt collection company and Synchrony Bank has contracted with us to collect the debt noted above. This is an attempt to collect a debt and any information obtained will be used for that purpose.

Exhibit D.

60. Exhibit D states that, as of July 22, 2016, the balance of Holmes' Synchrony account with an account number ending in 1829 was $1,702.00.

9

61.     Based on Exhibits C and D, the unsophisticated consumer would have no idea how much was owed on Holmes' Synchrony account when Allied Interstate mailed its letter on July 22, 2016.

62.     Exhibit C, sent by the creditor, informed Holmes that the balance was $1,702.53 on July 20, 2016.

63.     Exhibit D, sent by a third-party debt collector, informed Holmes the balance was $1,702.00 just two days later, on July 22, 2016.

64.     Based on the balances stated, any consumer would be confused as to the amount that was owed on the account at any given time throughout this period.

65.     Holmes did not make a payment on the account that would account for any reduction in the amount owed.

66.     Allied's representation that the balance of the account is lower than the actual amount of the balance – by truncating the cents – places the consumer at risk of not paying a sufficient amount to pay off the balance.

67.     A consumer who believes she is paying off an account, but whose payment is actually short of the real balance of the account, risks incurring significant costs due to unpaid residual interest and late fees.

68.     Moreover, Exhibit D is false, deceptive, and misleading on its face as to the amount Allied Interstate is authorized to attempt to collect.

69.     Exhibit D states that "Synchrony Bank has contracted with us to collect the debt noted above." Exhibit D.

70.     However, upon information and belief, the amount of the "debt noted above" that Allied Interstate is attempting to collect is not "noted above."

71.     Exhibit C states that the "Total Minimum Payment Due" on Holmes' account as of July 20, 2016 was $269.00, with a "Payment Due Date" of August 12, 2016.

72.     Upon information and belief, at the time Allied Interstate mailed Exhibit D, the balance of Holmes' Synchrony account had not been accelerated.

73.     Because the balance of Holmes' Synchrony account had not been accelerated, Allied Interstate would not have been authorized to collect the entire balance, $1,702.53, or any amount greater than the "Total Minimum Payment Due," which was $269.00.

74.     Misstating Holmes' total account balance is material because it is a false statement directly concerning the character, amount, or legal status of the debt. 15 U.S.C. § 1692e(2)(a).

75.     Moreover, Exhibit D's false, deceptive, and misleading statements as to the amount it was authorized to attempt to collect are materially misleading statements because they directly concern the character, amount, or legal status of the debt.  15 U.S.C. § 1692e(2)(a).

76.     It is not unusual for banks to hire a debt collector to collect only the "past due" amount, *i.e.,* missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)."

77.     Exhibit D overstates amount that Allied Interstate is actually trying to collect.

78.     Exhibit D indicates that Allied Interstate is actually attempting to collect the entire account balance when it has not been hired to do so.  Moreover, Exhibit D misstates this amount.

79.     Upon information and belief, the purpose of Allied Interstate's conduct – overstating the amount it is hired to collect – is to increase its profits under false pretenses.

11

80.     Upon information and belief, Allied Interstate, like most third-party debt collectors, is paid on a contingency basis, retaining a portion of each debt recovered. *See* 78 FR 67848, 67849 (Nov. 12, 2013) ("Typically, third-party collectors are paid on a contingency basis, usually a percentage of recoveries.").

81.     Upon information and belief, if a consumer pays Allied Interstate an amount greater than the "Total Minimum Payment Due" stated on Exhibit C, Allied Interstate is still entitled to retain a portion of that recovery.

82.     Holmes was confused by Exhibits C-D.

83.     Holmes had to spend time and money investigating Exhibits C-D and the consequences of any potential responses to Exhibits C-D.

84.     Holmes had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Holmes on the consequences of Exhibits C-D.

### ***Facts Relating to Plaintiff O'Boyle***

85.     Sometime prior to November 21, 2016, O'Boyle obtained a "TJX Rewards" ("TJX") credit card, used solely for personal, family, or household purposes. The creditor of O'Boyle's TJX credit card account was Synchrony. O'Boyle's Synchrony account was associated with an account number ending in 7365.

86.     On or about November 21, 2016, Synchrony mailed an account statement to O'Boyle regarding her Synchrony account ending in 7365. A copy of this account statement is attached to this complaint as Exhibit E.

87.     Exhibit E contains the following:

**The TJX Rewards®**
**Credit Card**

ANNE O'BOYLE
Account Number ████████ 7365

Visit us at www.tjxrewards.com
Customer Service: 1-877-822-2014

| Summary of Account Activity | |
|---|---|
| Previous Balance | $252.13 |
| + Fees Charged | **$35.00** |
| + Interest Charges | **$6.11** |
| **New Balance** | **$293.24** |
| Credit Limit | $300.00 |
| Available Credit | $0.00 |
| Statement Closing Date | 11/21/2016 |
| Days in Billing Cycle | 31 |

| Payment Information | |
|---|---|
| New Balance | $293.24 |
| Amount Past Due | $100.00 |
| Total Minimum Payment Due | $145.00 |
| Payment Due Date | 12/14/2016 |

**Late Payment Warning:** If we do not receive your Total Minimum Payment Due by the Payment Due Date listed above, you may have to pay a late fee up to $35.00.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay ... | You will pay off the balance shown on this statement in about ... | And you will end up paying an estimated total of ... |
|---|---|---|
| Only the minimum payment | 6 months | $310.00 |

If you would like information about **credit counseling services**, call 1-877-302-8775.

Exhibit E.

88.     Exhibit E states that, as of November 21, 2016, the "New Balance" of O'Boyle's Synchrony account with an account number ending 7365 was $293.24 and that this account had an "Amount Past Due" of $100.00 and a "Total Minimum Payment Due" of $145.00, with a "Payment Due Date" of December 14, 2016.

89.     On or about November 24, 2016, Allied Interstate mailed a debt collection letter to O'Boyle regarding an alleged debt, allegedly owed to "Synchrony Bank" for O'Boyle's "TJX Rewards Credit Card Account" with an account number ending in 7365.  A copy of this letter is attached to this complaint as Exhibit F.

90.     Upon information and belief, Exhibit F is a form letter, generated by computer, and with the information specific to O'Boyle inserted by computer.

13

91.     Upon information and belief, Exhibit F is a form debt collection letter, generated by computer, and with the information specific to O'Boyle inserted by computer.

92.     Upon information and belief, Exhibit F was the first debt collection letter Defendant mailed to O'Boyle regarding this alleged debt.

93.     Exhibit F contains the statutorily required validation notice, advising Holmes of her rights to dispute the debt:

Unless you notify us within 30 days after receiving this letter that you dispute the validity of this debt or any portion thereof, we will assume that this debt is valid. If you notify us in writing within 30 days after receiving this letter that you dispute the validity of this debt, or any portion thereof, we will obtain and mail to you verification of the debt or a copy of a judgment. If you request of us in writing within 30 days after receiving this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit F.

94.     Exhibit F also contains the following:

Re:     TJX Rewards® Credit Card Account
        Creditor: Synchrony Bank   Account No. ************7365
        Amount Owed: $293.00
        Reference No.: ▓▓▓▓▓▓5085

Exhibit F.

95.     Exhibit F also states:

We are a debt collection company and Synchrony Bank has contracted with us to collect the debt noted above. This is an attempt to collect a debt and any information obtained will be used for that purpose.

As of the date of this letter, the Amount Owed is $293.00. Because the creditor continues to assess interest on the debt, the amount due on the day you pay may be greater. Hence, if you pay the Amount Owed shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you of any remaining balance.To make a payment, please telephone us at 866-875-5326 or mail your payment using the coupon on the reverse side of this letter. You may also pay your balance online. Please visit www.tjxrewards.com, a safe and secure website. By sending us a check or giving us your checking account information for payment, you authorize us to collect funds electronically, in which case your check may not be returned to you. We may also arrange for a direct debit from your checking account.

Exhibit F.

96.     Exhibit F states that, as of November 24, 2016, the balance of O'Boyle's Synchrony account with an account number ending in 7365 was $293.00.

14

97. Based on Exhibits E and F, the unsophisticated consumer would have no idea how much was owed on O'Boyle's Synchrony account when Allied Interstate mailed its letter on November 24, 2016.

98. Exhibit E, sent by the creditor, informed O'Boyle that the balance was $293.24 on November 21, 2016.

99. Exhibit F, sent by a third-party debt collector, informed O'Boyle the balance was $263.00 just three days later, on November 24, 2016.

100. Based on the balances stated, any consumer would be confused as to the amount that was owed on the account at any given time throughout this period.

101. O'Boyle did not make a payment on the account that would account for any reduction in the amount owed.

102. Allied's representation that the balance of the account is lower than the actual amount of the balance – by truncating the cents – places the consumer at risk of not paying a sufficient amount to pay off the balance.

103. A consumer who believes she is paying off an account, but whose payment is actually short of the real balance of the account, risks incurring significant costs due to unpaid residual interest and late fees.

104. Moreover, Exhibit F is false, deceptive, and misleading on its face as to the amount Allied Interstate is authorized to attempt to collect.

105. Exhibit F states that "Synchrony Bank has contracted with us to collect the debt noted above." Exhibit F.

106. However, upon information and belief, the amount of the "debt noted above" that Allied Interstate is attempting to collect is not "noted above."

15

107.   Exhibit E states that the "Total Minimum Payment Due" on O'Boyle's account as of November 21, 2016 was $145.00, with a "Payment Due Date" of December 14, 2016.

108.   Upon information and belief, at the time Allied Interstate mailed Exhibit F, the balance of O'Boyle's Synchrony account had not been accelerated.

109.   Because the balance of Holmes' Synchrony account had not been accelerated, Allied Interstate would not have been authorized to collect the entire balance, $293.24, or any amount greater than the "Total Minimum Payment Due," which was $145.00.

110.   Misstating O'Boyle's total account balance is material because it is a false statement directly concerning the character, amount, or legal status of the debt. 15 U.S.C. § 1692e(2)(a).

111.   Moreover, Exhibit F's false, deceptive, and misleading statements as to the amount Allied was authorized to attempt to collect are materially misleading statements because they directly concern the character, amount, or legal status of the debt.  15 U.S.C. § 1692e(2)(a).

112.   It is not unusual for banks to hire a debt collector to collect only the "past due" amount, *i.e.,* missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)."

113.   Exhibit F overstates the amount that Allied Interstate is actually trying to collect.

114.   Exhibit F indicates that Allied Interstate is actually attempting to collect the entire account balance when it has not been hired to do so.  Moreover, Exhibit F misstates this amount.

16

115.   Upon information and belief, the purpose of Allied Interstate's conduct – overstating the amount it is hired to collect – is to increase its profits under false pretenses.

116.   Upon information and belief, Allied Interstate, like most third-party debt collectors, is paid on a contingency basis, retaining a portion of each debt recovered.  *See* 78 FR 67848, 67849 (Nov. 12, 2013) ("Typically, third-party collectors are paid on a contingency basis, usually a percentage of recoveries.").

117.   Upon information and belief, if a consumer pays Allied Interstate an amount greater than the "Total Minimum Payment Due" stated on Exhibit E, Allied Interstate is still entitled to retain a portion of that recovery.

118.   O'Boyle was confused by Exhibits E-F.

119.   O'Boyle had to spend time and money investigating Exhibits E-F and the consequences of any potential responses to Exhibits E-F.

120.   O'Boyle had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise O'Boyle on the consequences of Exhibits E-F.

## THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 et seq.

121.   The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the

collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

122. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

123. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

124. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680

18

(Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989)

125.    The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S.

19

App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

126. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

127. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

128. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of—the character, amount, or legal status of any debt."

129. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

130. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

20

131.   15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

132.   15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

133.   The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

134.   While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a

21

letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

135. <u>Exhibit B</u> misstates the amount of the debt on the date that the letter was sent to the consumer.

136. Misstatement of Plaintiff's debt is a *per se* violation of 15 U.S.C. § 1692g(a)(1). There is no materiality inquiry required where a debt collector fails to make a disclosure required under § 1692g. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 ("for good reason, we have not extended the implicit materiality requirement of § 1692e to reach claims under §1692g(a).").

137. Moreover, misstatement of Plaintiff's debt is a material false statement (*see Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009)) because it misleads the unsophisticated consumer about the amount of the debt. 15 U.S.C. § 1692e(2)(a).

## THE WISCONSIN CONSUMER ACT, CH. 421-427 WIS. STATS.

138. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

139. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

22

140.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

141.    "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

142.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

143.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]."  Wis. Stat. § 421.106(1).

144.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

145.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

23

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

146. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

147. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

148. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

149. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

150. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

151. Count I is brought on behalf of Plaintiff Gajewski.

152. Exhibit B does not state the balance of Plaintiff Gajewski's account on the day the letter was sent in a non-confusing manner. Exhibit B understates the amount of the debt and misleads the unsophisticated consumer.

153. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692g(a)(1).

24

## **COUNT II – FDCPA**

154.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

155.    Count II is brought on behalf of Plaintiff Gajewski.

156.    Exhibit B states the amount of the debt that Allied Interstate was attempting to collect in a confusing manner by stating multiple amounts that Allied Interstate was attempting to collect.  Exhibit B.

157.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1). and 1692g(a)(1).

## **COUNT III – FDCPA**

158.    Count III is brought on behalf of Plaintiff O'Boyle.

159.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

160.    Exhibit F overstates the amount of the debt that Allied Interstate was attempting to collect in a confusing manner by falsely implying that the balance of O'Boyle's Synchrony account had been accelerated at the time Exhibit F was mailed.

161.    Exhibit F also falsely states the balance of O'Boyle's Synchrony account.

162.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f)1_. and 1692g(a)(1).

## **COUNT IV - WCA**

163.    Count IV is brought on behalf of all Plaintiffs.

164.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

165.    As a licensed debt collector, Allied Interstate engages in conduct that can reasonably be expected to harass a debtor or a person related to the debtor when it violates the FDCPA.

166.    Allied Interstate attempted to collect the whole of plaintiffs' that had not yet become due misrepresented the amount Plaintiffs owed as of the date of its letter.

167.    Overstating the amount Allied Interstate is authorized to collect is a form of harassment.

168.    Misstating the total balance owed is also a form of harassment because, if Plaintiffs paid what Allied Interstate stated was the "Total Balance," the remaining balance of the account would continue to accrue interest and Allied Interstate could potentially continue to attempt to collect on the account.

169.    Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

170.    Plaintiffs bring this action on behalf of two Classes.

171.    Class I ("Equivocating Balance Class") consists of (a) all natural persons in the State of Wisconsin (b) who were a sent collection letter in which the balance of the account was rounded down to the nearest whole dollar, (c) seeking to collect a debt, incurred for personal, family or household purposes (d) that was owed to Synchrony (e) between November 20, 2016 and November 20, 2017, inclusive, and (f) that were not returned by the postal service.  All Plaintiffs are the designated representatives for Class I.

172.    Class II ("False Acceleration Class") consists of (a) all natural persons in the State of Wisconsin (b) who were a sent collection letter in the form represented by Exhibit F to the

complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes (d) that was owed to Synchrony (e) between November 20, 2016 and November 20, 2017, inclusive, and (f) that were not returned by the postal service. Plaintiff O'Boyle is the named representative for Class II.

173. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

174. There are questions of law and fact common to the members of the each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

175. Plaintiffs' claims are typical of the claims of the members of each class. All are based on the same factual and legal theories.

176. Plaintiffs will fairly and adequately represent the interests of the members of each class. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

177. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

178. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiffs and the Class and against Defendants for:

(a)     actual damages;

27

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  November 20, 2017

**ADEMI & O'REILLY, LLP**

By:     s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com

28